70 N.J. Super. 215 (1961)
175 A.2d 474
HAROLD L. LEHNER AND THEODORE W. MITCHELL, PLAINTIFFS-APPELLANTS,
v.
INTERSTATE MOTOR LINES, INC., A CORPORATION OF THE STATE OF NORTH CAROLINA AND ROBERT ROLAND JORDAN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1961.
Decided October 26, 1961.
*216 Before Judges GAULKIN, KILKENNY and HERBERT.
Mr. Peter W. Mitchell argued the cause for the appellant (Messrs. Stern and Mitchell, attorneys).
Mr. Roy D. Cummins argued the cause for the respondents (Mr. Samuel P. Orlando, attorney).
PER CURIAM.
Plaintiff Mitchell was the driver and plaintiff Lehner the passenger in an automobile which was struck in the rear by a truck owned by defendant Interstate Motor Lines, Inc. and driven by defendant Jordan. The jury returned a verdict in Mitchell's favor of $320 and in Lehner's favor of $270, the exact amount of their claimed medical bills. Plaintiffs moved for a new trial as to damages only. The motion was denied, and plaintiffs appeal.
*217 The accident happened November 19, 1958. In the pretrial order, signed April 8, 1960, Mitchell said he "sustained the following injuries: Contusion to front of the chest, sprain of left shoulder joint, nervous shake up, Medical Bills: Dr. Meshberg, $225." Lehner said he "sustained the following injuries: Contusion of the left knee; sprain in muscle of neck; concussion of brain, and nervous shake up. Medical bills: Dr. Meshberg, $210."
The testimony at the trial was that Lehner had visited Dr. Meshberg for treatment 42 times from the date of the accident to June 29, 1959, for which Dr. Meshberg's bill was the $210 mentioned in the pretrial order; that he had had no medical treatment thereafter until July 19, 1960 when, because of occasional pains in his head, he returned for X-rays ($25) and 7 additional treatments ($35) which brought the claimed total of Lehner's medical bill to $270.
Mitchell, on the other hand, said he visited Dr. Meshberg 45 times from the date of the accident to July 19, 1959, for which the bill was the $225 mentioned in the pretrial order. He also sought no medical attention until June 6, 1960 when, he claimed, he had an attack of acute pain in his shoulder and his arm "froze," for which he was referred to a Dr. Wessel, who took X-rays and gave him X-ray treatments at a total cost of $65, making Mitchell's total claimed medical bills $320.
At the trial defendants denied that either plaintiff had been injured, and that they needed the over 40 treatments each which they claimed Dr. Meshberg gave them prior to the date of the pretrial order. Especially vigorous was defendants' attack on plaintiffs' testimony that they had had to return for further treatment in June and July 1960. Defendants charged that any treatment received then by plaintiffs was either wholly unnecessary or unrelated to the accident.
Plaintiffs' basic contention is that by its verdict in the exact amount of the bills the jury found that all of the claimed medical attention was necessary and that the bills were reasonable, and, therefore, since the jury allowed plaintiffs *218 nothing for pain and suffering, contrary to the charge of the court, the verdict was plainly the result of "mistake, passion, prejudice or partiality" and "clearly inadequate as a matter of law," and should have been set aside, and a new trial should have been ordered as to damages only. Plaintiffs cite Justice v. Weise, 14 N.J. Super. 9 (App. Div. 1951) and the Annotation in 20 A.L.R.2d 276.
Defendants, on the other hand, strenuously deny that the jury intended by its verdict to approve the necessity and the reasonableness of all of the claimed medical bills. Defendants do not contend that the jury gave each plaintiff his necessary medical expenses plus an amount for his pain and suffering, the total of which by coincidence just happened to be the precise amount that plaintiff claimed for the medical bills alone. What defendants do say, to quote from their briefs, is that the jury awarded "the entire sum" of the claimed medical expenses because it found "that the bills themselves were higher than was warranted by the injuries sustained and the pain and suffering endured, and therefore an award in that amount was more than justified."
The trial judge agreed that this was the manner in which the jury arrived at the figures contained in the verdict. He commented disparagingly upon the testimony of the plaintiffs and their doctor and upon their manner of testifying and concluded:
"As far as the doctor's treatment is concerned I feel that the jury properly arrived at the conclusion that mostly all of this treatment was totally unnecessary. I think further that the jury felt that there was some doubt even as to the veracity of the doctor's testimony in view of the fact that he was an examining physician for their insurance company.
Under the circumstances, in their appraisal of the whole situation I think the jury very clearly resolved the fact that the liability was on the part of the defendant, but that from the standpoint of injury that if any injury whatsoever was suffered, it was minimal in nature."
We agree with the defendants and the trial court that the jury did not approve the claimed medical expenses, but probably reasoned as defendants have surmised in the above quotation from their brief. But when the jury did *219 so, it disregarded the instructions of the court to fix separate sums for the reasonable value of the necessary medical expenses and for the pain and suffering and to bring in a lump sum award for the two. That duty was not discharged but shirked if the jury did, in effect, say "Let's give plaintiffs the medical expenses which they claim but which are more than they are entitled to, and let whatever the surplus may be take care of their pain and suffering, if they had any." Such a verdict is plainly improper. "Damages awarded must be consonant with the testimony and the law as charged by the court." Justice v. Weise, supra, at p. 13. The jury may not use a device  in this case, a handy set of figures  as a short cut to reach a solution, to avoid the pain of reasoning and the effort of following the court's instructions.
However, we consider this case a proper one for the use of the additur. Cf. Moran v. Feitis, 69 N.J. Super. 531 (App. Div. 1961). It is plain from the verdict, in the light of the evidence and the charge, that the jury decided that neither plaintiff suffered permanent injury. The trial court charged the jury "that there is no testimony in the case that Mr. Lehner's injuries will continue permanently," and, as we have said, the jury thereupon gave Lehner the verdict of $270. Mitchell claimed that in June 1960 he developed a bursitis in his shoulder. Dr. Meshberg testified that this was a result of the accident, and although "from June 6, 1960 he has improved * * * that shoulder will, any time will reoccur." Defendants' Dr. Grenhart denied that the bursitis was caused by the accident. Since the jury awarded Lehner the amount of his claimed medical bill after the judge charged it that Lehner had suffered no permanent injury, it seems to us plain that, when the jury gave Mitchell also only the amount of his claimed medical bill, it did so upon the basis that Mitchell also had suffered no permanent injury.
The question then is, what would be a fair additur? As we said in Moran v. Feitis, supra, it must be borne in *220 mind that defendants may refuse to pay the additur and insist on a new trial by jury, but that the plaintiffs have no such protection. We have examined the testimony with that in mind. We note defendants' only medical expert did not examine plaintiffs until March 18, 1960, about sixteen months after the accident. There is nothing to indicate there was any earlier examination, although suit was started in August 1959, and claim was probably made earlier. An earlier examination might have given a firm basis upon which to evaluate plaintiffs' claims. On March 18, 1960 defendants' Dr. Grenhart found, when he examined Mr. Lehner, "there was one point where there was some residual tenderness in the paravertebral cervical muscles just below the left occipital, right in this area, and that was not at all marked. He was able to fully flex his head, extend it, rotate it, from side to side, without pain." Dr. Grenhart testified "From the history that I received from Mr. Lehner and the subsequent development it was my feeling that he had sustained a bruising injury to his left knee and probably had sustained a sprain of his neck muscles * * *. At the time of his examination it was my feeling that he had made a good recovery. There was one point of some minimal tenderness, that is, he said it was tender, in the occipital cervical muscles, this area just below the occiput which was not at all marked, and it was my feeling that in due course of time it would burn itself out."
As to Mitchell, Dr. Grenhart said "Well, it was my feeling that if all these facts as given to me [by Mitchell] were accurate, he had possibly sustained a sprain of the neck muscles on the left side with a contusion of his left shoulder."
In short, if the verdict allowed nothing for pain and suffering (as plaintiffs contend) or an amount arrived at in the artificial manner posited by defendants, it may not stand in its present amount.
Under all of the circumstances, in viewing the testimony in the fashion we have mentioned, we think that a reasonable and unprejudiced jury would probably not have brought in *221 a verdict upon this evidence in the amount of more than $950 in favor of Lehner and $800 in favor of Mitchell. Therefore, unless within 20 days after the filing of our mandate herein the defendants, in authentic form, express their consent to pay to the plaintiffs said sums, a new trial limited solely to the determination of the damages is directed. Cf. Bachmann v. Passalacqua, 46 N.J. Super. 471 (App. Div. 1957), certif. denied 25 N.J. 406 (1957).
So ordered.