## G. Timothy Freeman vs. Robert F. Wood, Jr.

Worcester. November 7, 1979. — February 8, 1980.

Present: Hennessey, C.J., Quirico, Kaplan, Wilkins, & Abrams, JJ.

*Constitutional Law,* Trial by jury, Additur. *Practice, Civil,* Trial by jury, Additur, Damages, New trial. *Jury and Jurors. Damages,* Additur.

The additur procedure set forth in Mass. R. Civ. P. 59 (a) does not conflict with art. 15 of our Declaration of Rights which guarantees trial by jury of civil causes. [781-783]

Civil action commenced in the Superior Court on January 5, 1976.

The case was tried before *Alberti,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Marc J. Shepcaro* for the plaintiff.
*Philip I. Tirrell* for the defendant.

Kaplan, J. This appeal attacks the "additur" procedure, which appears in Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974), as a counterpart of the "remittitur" procedure,[1] on the ground that it conflicts with art. 15 of our Declaration of Rights which guarantees trial by jury of civil causes.[2]

In an action in Superior Court, county of Worcester, for personal injuries resulting from a collision of vehicles on a public highway, the plaintiff Freeman won a verdict of

---

[1] The relevant part of the rule is set out below in our text.

[2] "In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury; and this method of procedure shall be held sacred, unless, in causes arising on the high seas, and such as relate to mariners' wages, the legislature shall hereafter find it necessary to alter it."

$10,000 against the defendant Wood upon the jury's special verdict finding in answers to questions that the defendant was wholly responsible and the plaintiff was damaged in the amount mentioned. The plaintiff presented a motion for a new trial claiming, among other things, that the damages awarded were inadequate. The judge, prepared to hold that a new trial should be allowed solely on the latter ground, followed the terms of rule 59 (a) and gave the defendant an opportunity to accept an addition to the verdict of $10,000, failing which, a new trial would be ordered as to damages.[3]  When the defendant agreed to the addition, judgment entered for $20,000 with interest and costs. The plaintiff opposed the additur practice, as described, on the constitutional ground, and contended that the judge should have allowed a new trial regarding damages; and he makes the same arguments on his present appeal from the judgment. It should be observed that the plaintiff does not dispute that this was a proper occasion for additur if the rule is valid, and, apart from a bare assertion, the plaintiff advances no argument in his brief on this appeal that the amount of the additur as determined by the judge was unreasonable. Thus the constitutional question is put quite cleanly.

In relevant part rule 59 (a) repeats the text of legislation previously in force[4] and is as follows:

---

[3] In more detail: The judge first granted the plaintiff's motion for a new trial. On the defendant's motion for reconsideration, the judge, recognizing that he had not complied with the additur provision, offered the defendant the chance to add to the verdict as required by that provision.

[4] The remittitur-additur provision was formerly G. L. c. 231, § 127. Upon adoption of our rules of civil procedure in 1974, it was incorporated in rule 59 (a). Section 127 was repealed by St. 1975, c. 377, § 109.

Remittitur had been formalized by St. 1897, c. 472, § 2. In 1945, a statement on additur was enacted but the additur was to be offered to "the parties." St. 1945, c. 578, § 1. (See 29 Mass. L.Q. No. 4, 25-27 [1944].) The latest text, as incorporated in rule 59 (a), was enacted by St. 1967, c. 139. (See Hennessey, Procedure and Evidence — Suggestions for Change, 50 Mass. L.Q. 329, 330-331 [1965].)

"A new trial shall not be granted solely on the ground that the damages are excessive until the prevailing party has first been given an opportunity to remit so much thereof as the court adjudges is excessive.  A new trial shall not be granted solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an addition to the verdict of such amount as the court adjudges reasonable."

The approach this court has long taken to like constitutional questions speeds an answer to the issue of the compatibility of additur with the jury right, and we need not be delayed by a canvass of the considerable literature on that issue.[5]  We have emphasized repeatedly that art. 15 was not intended to preserve the minutiae of jury practice as at the time of the Revolution (even if those details could be recaptured at a distance of two hundred years).  Rather it was designed to ensure the continuance of the essentials of the civil jury as an institution; that is, a system for popular participation in trials of civil cases which helps to import community views and to avoid arbitrary or erratic decisions of common disputes.  See Qua, J., in *Commonwealth* v. *Bellino,* 320 Mass. 635, 639-640, cert. denied, 330 U.S. 832 (1947).[6]  Part of the notion of a jury is that it operates under the supervision of a judge, and it may be predicated of the durable basis of the relationship that the supervision is not to become unreasonably and drastically intrusive on the lay contribution.  Short of impairment of the vital elements of

---

[5] For general discussion with collation of some of the secondary writings, see F. James & G. Hazard, Civil Procedure § 7.21, at 331-336 (2d ed. 1977); California Law Revision Commission, Recommendation and Study Relating to Additur (October 1966).  See also the citations at Note, 76 Colum. L. Rev. 299 n.2 (1976).

[6] See also the expressions in *Bothwell* v. *Boston Elevated Ry.,* 215 Mass. 467, 472-474 (1913); *Opinions of the Justices,* 360 Mass. 877, 882-884 (1971); *Opinion of the Justices,* 373 Mass. 915, 917-918 (1977) (grand jury); *Jones* v. *Robbins,* 8 Gray 329, 340, 343-344 (1857) (same).

the jury thus conceived, there is no constitutional obstacle to its regulation and modification in the light of changed conditions or perceptions, or to the abandonment of older modes, or to the introduction of new ones. See Brandeis, J., in *Ex parte Peterson*, 253 U.S. 300, 309-310 (1920). The list of such changes wrought since 1780 is a long one. Examining the civil jury today and comparing it with older models, we see that few collateral attributes have remained untouched: consider such matters as qualifications, selection, and challenges of jurors; size of the jury; adjuncts to deliberations (e.g., use of auditor's findings); vote necessary for verdict; kinds of verdict; pre- and post-verdict judicial controls (e.g., summary judgment, judgment n.o.v.).[7] Indeed, as judges have observed, if it were not for such changes, the institution itself might not have survived; a flexibility or capacity for accommodation is perhaps the secret of its long life.

To mention briefly the historical background of remittiturs and additurs.[8] In England new trials for excessive or inadequate verdicts were rarely granted at the time of the American Revolution; the regular practice came later, with new trials for excessive verdicts arriving on the scene earlier than like disturbance of inadequate verdicts. Correspondingly, remittitur can be recognized in England well before additur is heard of. Crossing the ocean, we can surmise that the granting of new trials for excessive or inadequate

---

[7] For authorities sustaining particular modifications and usually listing other changes thought to meet the constitutional standard, see, e.g., *Holmes* v. *Hunt*, 122 Mass. 505 (1877) (use of auditor's report); *Simmons* v. *Fish*, 210 Mass. 563 (1912) (limiting new trial to issue of damages); *Bothwell* v. *Boston Elevated Ry.*, *supra* (practice of leave reserved); *Commonwealth* v. *Bellino*, 320 Mass. 635, cert. denied, 330 U.S. 832 (1947) (jury with alternates). See also *Colgrove* v. *Battin*, 413 U.S. 149 (1973); *Apodaca* v. *Oregon*, 406 U.S. 404 (1972); *Williams* v. *Florida*, 399 U.S. 78 (1970).

[8] There is discussion of the history in *Dimick* v. *Schiedt*, 293 U.S. 474 (1935), and by Traynor, J., concurring and dissenting, in *Dorsey* v. *Barba*, 38 Cal. 2d 350, 360 (1952), and again by Traynor, C.J., speaking for the court in *Jehl* v. *Southern Pac. Co.*, 66 Cal. 2d 821 (1967), overruling the *Dorsey* case.

verdicts may have come early in our local history, although it would surely be difficult to trace just how early. See *Simmons* v. *Fish,* 210 Mass. 563, 564-565 (1912), citing *Sampson* v. *Smith,* 15 Mass. 365, 367 (1819), and *Taunton Mfg. Co.* v. *Smith,* 9 Pick. 11 (1829). It would appear unlikely that Massachusetts had run ahead of England in establishing any definite practice on the lines of remittitur before 1780. We add that recent research shows there was no certainty of standard among the original States about the interaction of judge and jury — a fact that would have added to the difficulty of achieving an acceptable phrasing of the Seventh Amendment to the Federal Constitution in specific terms, if there had been a disposition to attempt to do so. See Henderson, The Background of the Seventh Amendment, 80 Harv. L. Rev. 289 (1966).

As indicated above, we do not think the particular historicity of additur is of any transcendent importance; what matters is whether that procedure strikes at the fundamentals of the jury, and we believe it does not. The present defendant agreed to the addition to the verdict and does not complain of it in this case. The plaintiff has had one trial by jury and a verdict. He starts in the rather awkward position of trying to use the constitutional provision not to protect the jury's verdict but to be saved and delivered from it. Under the additur practice he is permitted to hold his verdict as to liability — although by the historic common law, to which he seeks to appeal in attacking the additur, a verdict must stand or fall in its entirety. See *Simmons* v. *Fish, supra* at 565. The judge is entrusted as usual with power regarding allowance of a new trial,[9] and in considering the

---

[9] It is worth some emphasis that in deciding whether a jury award is excessive or inadequate the trial judge has his traditional discretion, and his view that the jury verdict should stand would generally be respected by an appellate court, at least where damages were unliquidated. See *Pridgen* v. *Boston Hous. Auth.,* 364 Mass. 696, 715 (1974); *Loschi* v. *Massachusetts Port Auth.,* 361 Mass. 714, 715 (1972); *Bartley* v. *Phillips,* 317 Mass. 35, 41-44 (1944); *Palma* v. *Racz,* 302 Mass. 249, 250 (1939). Compare Mr. Justice Stone's remarks dissenting in the *Dimick* case, quoted below in our text, about grounds for denying a new trial.

matter he forms an opinion about the range of a just verdict. It is a figure within that range, larger than the jury's award, that he suggests to the defendant in granting a new trial nisi.[10]  Upon agreement by the defendant, and denial of the new trial and entry of judgment, the plaintiff has a further possible recourse in that he may appeal and ask the higher court to consider and decide whether the amount of the additur was out of bounds as unjustifiably low.[11]  The entire procedure is not, we think, too violent an incursion by the judges on the operations of juries.  The plaintiff in additur is not allowed the aleatory privilege of attempting to persuade a second (or third or fourth?) jury to allow him a still larger verdict within the range of reasonableness.  But art. 15 does not ensure that a jury shall have the last word on every issue that can be called an issue of fact — there are, indeed, many issues of fact that are for the judge alone, and the balance between judge and jury has never been thought immutable.[12]  We think, finally, that it is not an irrelevancy that additur, like remittitur, has been regularly recommended by students of civil procedure as an "enlightened [aid] in securing substantial justice between the parties without the burdensome costs, delays and harassments of new trials" (*Fisch* v. *Manger*, 24 N.J. 66, 72 [1957], citing to the literature), or that here the Legislature itself sponsored these procedures which were absorbed into the rules.[13]  As Professor A. W. Scott wrote a half century ago, in the progressive evolution of the jury "it must be something more

---

[10] Under the text of rule 59 (a), the judge suggests an addition of such amount as he "adjudges reasonable."  The same approach applies on remittitur, as the judge is to suggest remittal of so much as he "adjudges excessive."  See *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 660-662 (1978); *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 345-346 (1972).

[11] We do not attempt to explore here the whole question of appellate rights. See Note, 76 Colum. L. Rev. 299 (1976).

[12] This point is made in *Jehl* v. *Southern Pac. Co.*, *supra.*  See also *Holmes* v. *Hunt*, 122 Mass. 505, 516-521 (1877).

[13] The notes of the advisory committee quite properly reserved the question of the constitutionality of the additur procedure.

than a bulwark against tyranny and corruption: it must be an efficient instrument in the administration of justice." Fundamentals of Procedure in Actions at Law 107 (1922).

If doubt should remain about the constitutionality of the additur described in rule 59 (a) when considered independently of remittitur, it is, we think, much relieved upon consideration of the fact that remittitur has long been widely practiced throughout the country, and its constitutionality even in respect to the Seventh Amendment — probably a more stringent provision than art. 15 — has generally been considered settled.[14] There is no relevant analytic difference between remittitur and additur.[15] And the more general or public advantages of these devices are comparable. To invalidate additur while upholding remittitur would create unfairness as well as anomaly: a plaintiff would have an absolute right to a new trial in the face of an inadequate jury award, but a defendant in case of an excessive award must submit to a lesser sum set by the judge and agreed by the plaintiff.[16]

Additur has made some progress among the States, and would have made more, had it not been for the decision of the Supreme Court of the United States in *Dimick* v. *Schiedt,* 293 U.S. 474 (1935) (5-4 decision).[17] There a United States District Court, without the help of a statute or rule, but evidently impressed with the common sense of the procedure, applied additur in a tort case. On final review in the Supreme Court, the additur was held to violate the Seventh Amendment. A majority, led by Mr. Justice Suther-

---

[14] See the discussion of *Dimick* v. *Schiedt* below in our text, and *Arkansas Valley Land & Cattle Co.* v. *Mann,* 130 U.S. 69 (1889).

[15] This appears from the dissent in the *Dimick* case and is shown in some detail by Taft, J., in *Markota* v. *East Ohio Gas Co.,* 154 Ohio St. 546, 556-559 (1951).

[16] See Traynor, J., concurring and dissenting, in *Dorsey* v. *Barba, supra* at 368. Cf. *Opinion of the Justices,* 207 Mass. 606, 610-611 (1911).

[17] The situation among the States as of 1966 is described in California Law Revision Commission, Recommendation and Study Relating to Additur (October 1966).

land, relied heavily on the fact that (apart from a somewhat analogous procedure in cases of mayhem) additur had not appeared in the English courts when the Federal Constitution was adopted. To be sure, remittitur had been practiced in the Federal courts since Justice Story's decision on circuit of *Blunt* v. *Little,* 3 Mason 102, Fed. Cas. No. 1578 (C.C.D. Mass. 1822). The majority rather regretted the Story decision, but justified a continuance of the remittitur practice in Federal courts on the ground that there was some pre-1791 precedent for remittitur in the English courts, and on the further ground that a distinction could be taken between remittitur and additur: remittitur was viewed as "lopping off an excrescence," but additur as a "bald addition." 293 U.S. at 486. A dissent by Mr. Justice Stone (joined by Hughes, C.J., and Brandeis and Cardozo, JJ.) posed and answered in the negative the question whether there was anything that commanded a Federal appellate court "to set aside the denial of the [plaintiff's] motion [for a new trial] . . . because the particular reasons which moved the trial judge to deny it are not shown to have similarly moved any English judge before 1791." *Id.* at 490 . (See note 9, *supra*). The dissent observed astringently that the meaning of the Seventh Amendment lay in fundamentals and was not to be found through "search of the legal scrap heap of a century and a half ago" (*id.* at 495); and argued that the asserted difference between remittitur and additur, used to support constitutionality in one case and defeat it in the other, was entirely empty.

The *Dimick* decision has been widely deplored by the commentators. It is not binding on the States, as the Seventh Amendment has not been extended to them. See *Pearson* v. *Yewdall,* 95 U.S. 294 (1877). There is reason to think that the form of that amendment, particularly the "reexamination" clause, may account for the decision.[18]

---

[18] The Seventh Amendment reads: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-

Our art. 15 has no such clause. It is not at all clear that the Supreme Court would come to the same result, if the *Dimick* case could appear there today as res nova: one sign is the Court's decision of *Baltimore & Carolina Line, Inc.* v. *Redman,* 295 U.S. 654 (1935), in effect overruling *Slocum* v. *New York Life Ins. Co.,* 228 U.S. 364 (1913), which had invalidated a judgment n.o.v. procedure.[19] This court in *Bothwell* v. *Boston Elevated Ry.,* 215 Mass. 467 (1913), upheld a similar "leave reserved" procedure shortly after and notwithstanding the *Slocum* decision, and remarked there (at 477), as it has elsewhere, that there appeared to be more flexibility in our art. 15 than in the Seventh Amendment. See also *Commonwealth* v. *Bellino,* 320 Mass. 635, 641, cert. denied, 330 U.S. 832 (1947).

Although views around the country are not uniform, we are strengthened in our conclusion that additur is a constitutionally permissible device by the well reasoned judgments of a number of the highest courts of the States to the same effect, rendered with due attention to the *Dimick* case. See especially *Fisch* v. *Manger,* 24 N.J. 66 (1957); *Genzel* v. *Halvorson,* 248 Minn. 527 (1957); *Caudle* v. *Swanson,* 248 N.C. 249 (1958); *Jehl* v. *Southern Pac. Co.,* 66 Cal. 2d 821 (1967), overruling *Dorsey* v. *Barba,* 38 Cal. 2d 350 (1952) (and see now Cal. Civ. Proc. Code § 662.5 [Deering 1973]).

Finally we emphasize that the trial judge is to use the additur process only when he concludes that the verdict is sound except for inadequacy of the amount and the inadequacy is such as to descend to the level of unreasonableness. An unduly slim verdict, however, may signal the existence of other defects in the work of the jury, or mistakes by the

---

examined in any Court of the United States, than according to the rules of the common law."

The bearing of the reexamination clause is brought out in *Slocum* v. *New York Life Ins. Co.,* 228 U.S. 364 (1913), mentioned in our text below. And see Note, 44 Yale L.J. 318 (1934).

[19] See also note 7, *supra,* citing Supreme Court decisions of recent years. (To be distinguished is the problem when a jury trial can be demanded of right under the Seventh Amendment.)

judge. In such a case additur would not be appropriate, and a simple new trial would be called for. All this is for consideration in the first place by the trial judge and presents no problem on the present appeal.

*Judgment affirmed.*