224 N.J. Super. 92 (1988)
539 A.2d 1224
ROBERT TRONOLONE, PLAINTIFF-APPELLANT,
v.
PETER PALMER, DEFENDANT-RESPONDENT, AND TOWNSHIP OF BRIDGEWATER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; JOHN DOE (A FICTITIOUS NAME REPRESENTING AN UNKNOWN DEFENDANT), DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 1988.
Decided March 23, 1988.
*95 Before Judges ANTELL and R.S. COHEN.
Roberta Abramson argued the cause for appellant.
Gregory P. Helfrich argued the cause for respondent Peter Palmer (O'Donnell, McCord & Leslie, attorneys).
The opinion of the court was delivered by COHEN, R.S., J.S.C.
Plaintiff Robert Tronolone was a passenger in a vehicle driven by defendant Peter Palmer, and was injured when it collided with a utility pole. He started this action for damages against Palmer and Bridgewater Township, on whose snowy road the accident occurred. After the complaint against the Township was dismissed, Palmer was found by the jury to have negligently caused the accident. For plaintiff's injuries, the jury awarded a verdict of $750. Plaintiff moved for a new trial on damages. The trial court denied the motion on condition that defendant accept an additur of $2750 for a total judgment of $3500. Defendant accepted; judgment was entered in that amount; plaintiff appealed, and we now reverse.
Plaintiff's physical injuries were uncontroverted. He had two deep lacerations above and to the side of his right eye. One of them was about one and one-half inches in length, extending diagonally through the eyebrow and interrupting its growth. The other was some two and one-quarter inches in length, extending from the eyelid, curving toward the top of the nose and then upward into the forehead. The plastic surgeon who repaired them described them both as "deep lacerations, shelving into the muscles." Both required three layers of sutures, one in the muscle layers, one in subcutaneous tissue, and one to close the skin. The resulting prominence of the *96 right brow near the larger scar, according to the surgeon, might be revised by further surgery or injection of artificial material, but the procedures could well be unsuccessful.
In addition, on the right ear, "there was a through and through laceration almost totally amputating the ear lobe and the lower edge of the helix. * * * The piece, the flap was a little over an inch long and was attached ... to the cheek by a two millimeter pedicle." It was reattached with "skin stitches front and back." In all, there were 71 sutures used on plaintiff's face and ear.
Plaintiff additionally sought damages for emotional reaction to the accident and to the cosmetic effects of the scars. A psychologist he consulted testified on his behalf. Defendant offered no evidence at all on the issue of damages.
After the $750 verdict, plaintiff moved for a new trial. The trial judge rendered an oral opinion in which he recited that plaintiff's face went through the windshield on impact; that the surgeon testified as to the permanency of the scars; that plaintiff, a 24 year old salesman, said he was self-conscious about the scars; he occasionally experienced numbness, and cold aggravated the condition. The judge then pointed out that, even though not refuted by witnesses, plaintiff's claim for psychological injuries contained damaging inconsistencies. The hint was that the jury could well have found the claim unconvincing.
The judge ruled that the $750 verdict was so disproportionate to the injuries as to shock the conscience of the court, and that to sustain the verdict would be manifestly unjust. He added:
the permanent nature of the scar on the plaintiff's face which results in a condition in which he appears to be always frowning was clearly under-evaluated by the jury.
Accordingly, the court ordered an additur of $2750, and denied plaintiff's application for a new trial on condition that defendant agree to entry of a judgment for $3500. The court did not explain how it arrived at the amount of the additur.
*97 A motion for a new trial on damages should not be granted unless the damage verdict is so disproportionate to the injury and resulting disability as to shock the court's conscience and convince it that to sustain the award would be manifestly unjust, Baxter v. Fairmont Food Co., 74 N.J. 588, 596 (1977), that is, unless it clearly and convincingly appears that there was a miscarriage of justice under the law. R. 4:49-1(a). The trial court's determination was plainly sound that the damage verdict was insufficient and could not stand.
Additur is an order denying plaintiff's application for a new trial on condition that defendant consent to an increase in the damage verdict as specified by the trial judge. Fisch v. Manger, 24 N.J. 66, 72 (1957).[1] The option to consent to an additur or risk the outcome of a new trial is defendant's. Plaintiff's choice is to accept the increased award or to appeal. Bitting v. Willett, 47 N.J. 6, 9 (1966). Remittitur is the opposite. It is an order denying defendant's application for a new trial on condition that plaintiff consent to a decreased judgment. McKinley v. Slenderella Systems of Camden, N.J., Inc., 63 N.J. Super. 571 (App.Div. 1960).
Additur and remittitur are legitimate mechanisms justified by the desirability of avoiding the expense and delay of a new trial. Fritsche v. Westinghouse Electric Corp., 55 N.J. 322, 330-331 (1970). They both have historical precedents, New Jersey Flax v. Mills, 26 N.J.L. 60 (Sup.Ct. 1856); Gaffney v. Illingsworth, 90 N.J.L. 490 (E. & A. 1917), and have survived attack as unconstitutional deprivations of litigants' rights to trial by jury. If fairly invoked, additur and remittitur violate *98 no constitutional interdictions, and serve to avoid a new trial "where substantial justice may be attained on the basis of the original trial." Fisch v. Manger, 24 N.J. 66, 80 (1957).[2]
Additur and remittitur both leave the liability verdict undisturbed. However, not every excessive damage verdict may be amenable to an order for remittitur. Where the damage verdict is so grossly excessive as to demonstrate prejudice, partiality or passion, and thus to generate the feeling that the liability verdict in plaintiff's favor is also tainted, or where the verdict seems to be a compromise as to liability or to be the result of some other error or distortion, the entire result of the trial must be discarded and a new trial must be ordered. Taweel v. Starn's Shoprite Supermarket, 58 N.J. 227, 231 (1971); 6A Moore's Federal Practice ¶ 59.08[7], p. 59-204 (1986). See also Henker v. Preybylowski, 216 N.J. Super. 513 (App.Div. 1987). Unless the trial process itself worked fairly, it is unlikely that substantial justice will be attained by adjusting the damage verdict reached in the original trial.
The same dangers also exist in the case of an inadequate damage verdict. Although a shockingly low damage verdict does not necessarily signify a fault in plaintiff's liability verdict, it may imply defects in the work of the court or jury. Esposito v. Lazar, 2 N.J. 257, 259-260 (1949); Freeman v. Wood, 401 N.E.2d 108 (1980). The liability verdict may survive only if it is separable and otherwise sound, and the damage verdict can be dealt with alone. Bitting v. Willett, 47 N.J. at 8; Esposito v. *99 Lazar, supra.[3] Here the device of additur was properly invoked. The focal issue is whether the court mistakenly exercised its discretion in fixing the additur amount.[4] Since the court made no statement on the subject, we cannot discern how it arrived at the amount it fixed.
There has been little guidance to the trial courts in the reported opinions on the question of how to fix the amount of an additur. The subject was discussed 27 years ago in Moran v. Feitis, 69 N.J. Super. 531 (App.Div. 1961), certif. den. 36 N.J. 299 (1962). There, an additur was ordered by the trial court, increasing the damage verdict from $2200 to $3700. Defendant consented. The trial court explained how it fixed the additur. Plaintiff claimed head and back injuries. Defendant did not deny the head injury but minimized it on the basis of an examining physician's opinion. Defendant, however, denied that plaintiff had suffered any back injury. The court expressed its view that the jury had totally and reasonably discounted the back complaints.[5] The verdict was inadequate, it said, solely for the head injury, even if one accepted defendant's medical expert's evaluation of it.
We ruled that it was improper to fix an additur amount on the basis of the resolution of all doubts against plaintiff, or on the basis of acceptance of defendant's witnesses' views. 69 N.J. Super. at 539, 541. We said that the trial courts, in fixing *100 an additur, should keep in mind that a defendant who thinks it too high may simply refuse to pay it and, instead, opt for a new trial. The wronged plaintiff does not have that easy option. If the court fixes an inadequate additur and defendant accepts, an unsatisfied plaintiff is put to the burden of an appeal, and the right to jury trial has suffered.[6] 69 N.J. Super. at 541.
The Moran v. Feitis court mentioned other states' approaches to the problem. For example, in Wisconsin, if the option to accept additur is given to defendant, the additur must be the highest sum which a fair-minded jury properly instructed would probably assess. McCauley v. International Trading Co., 268 Wis. 62, 66 N.W.2d 633 (1954). In New York also, an additur should give plaintiff the maximum amount which the jury could have found as a matter of law. O'Connor v. Papertsian, 309 N.Y. 465, 131 N.E.2d 883 (1956). In Ohio, on the other hand, additur should be "an amount which is more than the least that a reasonable jury would have awarded." Markota v. East Ohio Gas Co., 154 Ohio St. 546, 97 N.E.2d 13, 19 (1951). North Carolina agrees, ruling that additur should be "no less than a reasonable jury might award ... on the sharply conflicting evidence in the case." Caudle v. Swanson, 248 N.C. 249, 103 S.E.2d 357, 363 (1958).
In Moran v. Feitis, we found it unnecessary to choose among the sharply varying rules. We held only that in fixing the amount of the additur the trial court should not resolve all factual questions against plaintiff.
Moran v. Feitis was carried a step further in Lehner v. Interstate Motor Lines, Inc., 70 N.J. Super. 215 (App.Div. 1961). There, plaintiffs moved for a new trial on damages; their motion was denied, and they appealed. We reversed, held the verdict inadequate, and fixed an additur ourselves. We briefly explained the amount we chose as the highest which a reasonable and unprejudiced jury would have awarded. We did not, *101 however, say whether that was a universal standard for such cases.
In Wolfe v. Chateau Renaissance, 141 N.J. Super. 59, 66 (App.Div. 1976), we affirmed the trial court's remittitur because, although generous, it was not "beyond supportable evidence in the record." We did not say whether the trial judge fixing the amount of a remittitur (or additur) should resolve factual disputes in favor of plaintiff or defendant, or fix the damages the judge would have found as a juror.
In Hudgins v. Serrano, 186 N.J. Super. 465 (App.Div. 1982) we took a different tack in a remittitur case. There the jury had awarded $1.15 million in a wrongful death action. The trial court denied defendant's motion for a new trial or a remittitur. This court closely analyzed the evidence on damages, and concluded that the verdict was so high that it must be set aside. It then went on to fix an amount for remittitur. It said that it would accord to plaintiff the benefit of all favorable factual testimony and determined on that basis that a reasonable verdict for the losses would have been about $645,000. It said that a deviation by a jury of as much as 20% "might easily be understood and justified." 186 N.J. Super. at 481. It therefore fixed the remittitur amount at $750,000. In doing so, the court gave plaintiff what it saw as the reasonable benefit of all favorable testimony and inferences, and then added some 16% to that. Presumably, the rule of Hudgins v. Serrano would apply in reverse to an additur case, and a court would give defendant the benefit of all favorable factual testimony and fix a low additur on that basis.
The cases are not reconcilable. Moran v. Feitis says that an additur cannot be based on an acceptance of defendant's view of the facts; the plain implication of Hudgins v. Serrano is exactly the opposite. Lehner v. Interstate Motor Lines, Inc. goes further than Moran v. Feitis and seems to suggest that the additur amount should be the highest a reasonable and unprejudiced jury would give. Wolfe v. Chateau Renaissance *102 accepts any number that is not "beyond supportable evidence in the record."
Since Moran v. Feitis, other jurisdictions have wrestled with the additur problem. Massachusetts warns the trial court not to discount plaintiff's claim or order a low additur on the basis of what the court thinks the jury had in mind. VanAlstyne v. Whalen, 20 Mass. App. 239, 479 N.E.2d 720 (1985). The additur amount should be the amount the court adjudges to be reasonable. Freeman v. Wood, 379 Mass. 777, 401 N.E.2d 108 (1980). A Connecticut opinion expresses the same view in greater detail:
When determining the additur, the court must make a fair appraisal of the just damages which should be awarded.... (citing cases) In other words, a court may not award less than full damages which may be tolerated as being adequate if awarded by a jury, . .. [Barbieri v. Taylor, 37 Conn.Sup. 1, 426 A.2d 314, 317 (1980)].
See also Brower v. Perkins, 135 Conn. 675, 68 A.2d 146 (1949). Tennessee cites the New York rule of O'Connor v. Papertsian, but also refers to the judge's functioning as a "thirteenth juror" in fixing an additur. Kaiser v. Cannon, 529 S.W.2d 235 (Tenn. App. 1975).
Moore notes that the federal court opinions usually disclose no standards for determining the amount of remittitur, but
seem to fix the amount of the residue ... at a figure that the court believes a proper functioning jury should have found. [6A Moore's Federal Practice, § 59.08[7], p. 59-197 (1986)].
Presumably, the same rule would apply to additurs, if they were common in the federal courts.
The difficulty in finding the true rule is that there are two contrary policies at work, one diminishing the additur amount and the other tending to inflate it. The first policy is the practical one which looks to the purpose of ordering an additur  to save the court and the parties the time, uncertainty and expense of a new trial. If the court's primary purpose is to resolve the dispute, perhaps it should try to fix an amount *103 which defendant will accept and from which plaintiff will not appeal. Doing that may require the court to order a low additur to accommodate defendant's elation and plaintiff's deflation at the outcome of the first trial.
The contrary policy recognizes that it was plaintiff who was wronged by the shockingly low damage verdict; that such a verdict is not the result of a reasonable evaluation of the evidence, and that in correcting the wrong done to plaintiff the additur amount should not be lessened in deference to the jury's improper conclusions. In other words, if the jury's verdict was so wrong as to require correction by a new trial or additur, the court should not resolve facts and inferences against plaintiff on the thesis that the jury must have done so. The jury, after all, either misunderstood its function or the evidence before it. For one reason or another, the jury was very, very wrong. In addition, since it was plaintiff who was prejudiced, nothing justifies putting plaintiff to the additional burden of appealing an additur whose amount reflects the jury's insupportable verdict.
The first policy may be practical, but it improperly gives continuing effect to a damage verdict so unsound that it shocks the court's conscience and requires correction. The second policy may not resolve so many cases, but it will not unfairly treat a party already seriously wronged.
Additur and remittitur are not obligatory, although they are encouraged as practical devices to dispose of cases. They should not be used where the trial process itself has gone seriously awry. They should not be used to further prejudice a litigant already so badly treated as to be entitled to a new trial. In determining the proper amount of an additur or remittitur, the court must attempt the difficult task of determining the amount that a reasonable jury, properly instructed, would have awarded. The court is not to resolve all factual disputes in *104 favor of one party or the other, or try to follow the faulty reasoning of the jury, or fix the highest or lowest amount a reasonable jury could have awarded without reversal. The court must itself reach a fair damage verdict on the basis of the evidence it saw and heard, and order that amount in an additur or remittitur.
Because the task is such a difficult one, the trial court need not fear reversal in the absence of an affirmative showing of mistaken exercise of discretionary judgment.
Detailed findings in support of the additur amount should be given by the trial court, not only for our use in the event of an appeal, but for the parties' review so that they can consider the court's sound reasons for reaching a fair result. Defendant may reject the result or plaintiff may appeal, but a party afforded the opportunity to consider the court's explanation of its experienced view may be less inclined to do so.
In this case, we view $3500 as an impermissible underevaluation of plaintiff's damages. His scars, although well-healed, give him what the trial court described as a perpetual frown. Such scars are of greater consequence to a 24-year-old single man who has chosen a career in sales than that amount reflects. The experience of the accident, surgery and adjustment to the consequences are difficult to evaluate but certainly have a role in the damages plaintiff suffered. We could arrive at an additur ourselves. We believe it sound not to do so, however, on the basis of the unrevealing record before us. Although the record contains excellent reproductions of photos of plaintiff, the photos were taken a short time after surgery and do not accurately show the final result. The verbal descriptions by witnesses were sufficient basis for our decision on appeal, but not for a calculation of damages. We therefore reverse and remand for a new trial on damages only.
NOTES
[1] Actually, what the trial court did in Fisch v. Manger was to tell the parties that plaintiff's motion for a new trial would be granted unless defendant consented to an increased verdict. We are not aware of any operative differences between a "grant unless" and a "denial on condition." See "Additur  Procedural Boon or Constitutional Calamity," XVII DePaul Law Review, 175 (1967). The author uses the two formulations interchangeably. See pp. 175 and 182.
[2] Additur is prohibited in the federal courts by the Seventh Amendment's guarantee of jury trial. Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935) (Hughes, C.J., and Brandeis, Cardozo and Stone, JJ., dissenting). The decision does not apply in state courts. Fisch v. Manger, 24 N.J. at 75. It has been severely criticized. See "Additur  Procedural Boon or Constitutional Calamity," supra, n. 1; "Correction of Damage Verdicts by Remittitur and Additur," 44 Yale L.J. 318 (1934) (criticizing Court of Appeals decision in Dimick v. Schiedt).
[3] On the question whether the apportionment of liability is subject to additur and remittitur, see Bishop v. Harski, 191 N.J. Super. 109 (Law Div. 1983); Davis v. United States, 716 F.2d 418 (7 Cir.1983); Akermanis v. Sea-Land Service, Inc., 688 F.2d 898 (2 Cir.1982), cert. den. 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983); J.I. Case Co. v. McCartin-McAuliffe P. & H., 118 Ill.2d 447, 114 Ill.Dec. 105, 516 N.E.2d 260 (1987).
[4] We use the term additur not as the amount added to the jury's verdict, but as the total amount of the judgment offered by the court for defendant's acceptance in lieu of a new trial.
[5] In the absence of separate verdicts, it is hard to say how the court could have known that.
[6] The reverse is true in the case of remittitur.