NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is only binding on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0879-14T1

BARBARA ORIENTALE, and
MICHAEL ORIENTALE,

 Plaintiffs-Appellants,

v.

DARRIN L. JENNINGS,

 Defendant,

and

ALLSTATE NEW JERSEY
INSURANCE COMPANY,

 Defendant-Respondent.

________________________________________________________________

 Argued September 20, 2016 – Decided July 25, 2017

 Before Judges Messano, Espinosa and Guadagno.

 On appeal from the Superior Court of New
 Jersey, Law Division, Middlesex County, Docket
 No. L-3476-12.

 Jonathan H. Lomurro argued the cause for
 appellants (Lomurro, Munson, Comer, Brown &
 Schottland, LLC, attorneys; Mr. Lomurro, of
 counsel and on the briefs; Christina Vassiliou
 Harvey, on the briefs).
 Kenneth N. Lipstein argued the cause for
 respondent.

PER CURIAM

 Plaintiffs appeal from an order that awarded them additur in

lieu of a new trial, challenging the amount of the award. We

affirm.

 I.

 Following a motor vehicle accident, plaintiff Barbara

Orientale1 settled with the negligent driver for $100,000, the

policy limit of his insurance policy. She then filed suit against

her own insurer, defendant Allstate New Jersey Insurance Company,

under the underinsured motorist provision of her policy to obtain

further recovery for her injuries and for her husband's loss of

consortium claim.

 Following a damages only trial, the jury found plaintiff had

suffered a permanent injury and awarded her $200 in damages. The

jury awarded no money on the loss of consortium claim. In light

of the $100,000 recovery from the tortfeasor, the verdict was

molded to a "No Cause for action."

1
 Our references to "plaintiff" are to Barbara Orientale.
 2 A-0879-14T1
 Plaintiffs filed a motion "for a new trial on the value of

plaintiff's injuries"2 and at oral argument, agreed that their

request was, in the alternative, for additur.

 The trial judge found the $200 award constituted a miscarriage

of justice and that, pursuant to Rule 4:49-1(a), additur was

appropriate.3 He determined [t]he lowest verdict that a reasonable

jury could have reached based on the proofs in this case" was

$47,500, and therefore added $47,300 to the jury award of $200.

Because the amount did not exceed the $100,000 obtained from the

tortfeasor and the order was entered as a "No Cause for action."

 In this appeal, plaintiffs argue the trial court applied the

wrong standard for additur and erred in the analysis used to

determine the additur amount. Plaintiffs argue further that this

court should either make its own additur award based upon the

comparable verdicts supplied to the trial judge or remand for a

new trial on damages in front of a different judge. Plaintiffs

contend the trial judge erred in basing the additur amount "upon

2
 Plaintiffs' motion did not articulate any grounds for a new
trial regarding the loss of consortium claim and the trial judge
noted he "[did not] consider the application for a new trial or
additur to address consortium." Plaintiffs did not contend
otherwise.
3
 Defendant consented to the additur award granted by the trial
judge and did not cross-appeal. Accordingly, it has presented no
argument on appeal regarding liability, the jury's finding as to
permanency or the trial judge's decision that the $200 jury verdict
should be set aside.
 3 A-0879-14T1
the lowest value that a reasonable jury could find." Citing

Tronolone v. Palmer, 224 N.J. Super. 92, 103 (App. Div. 1988),

they argue the trial court was required to "attempt the difficult

task of determining the amount that a reasonable jury, properly

instructed, would have awarded." Plaintiffs argue that, in

selecting the lowest amount a jury would find, the trial judge

failed to adhere to this standard; the trial judge erred in

weighing the evidence; and the amount of the additur had no basis

in any of the cases reviewed by the trial court.

 After reviewing these arguments in light of the record and

applicable legal principles, we conclude that plaintiffs'

challenge to the additur award lacks merit and, therefore, their

remaining arguments are moot.

 II.

 "Additur and remittitur are legitimate mechanisms justified

by the desirability of avoiding the expense and delay of a new

trial" when the amount of a damages verdict constitutes a manifest

injustice that may be corrected without disturbing a liability

verdict. Id. at 97-98. Because they present mirror images of

remedies designed to cure the same ill – a damages verdict that

constitutes a manifest injustice – the principles applicable to a

court's review of an excessive verdict for purposes of remittitur

also apply to the review of "a shockingly low damage verdict."

 4 A-0879-14T1
Id. at 98. In Cuevas v. Wentworth Grp., 226 N.J. 480 (2016), the

Supreme Court described the fundamental principles governing

remittitur. As applied to additur, those principles are:

 [A] jury verdict is presumed to be correct and
 entitled to substantial deference, that the
 trial record underlying a [additur] motion
 must be viewed in the light most favorable to
 the [defendant], and that the judge does not
 sit as a decisive juror and should not
 overturn a damages award falling within a wide
 acceptable range — a range that accounts for
 the fact that different juries might return
 very different awards even in the same case.

 [Id. at 486.]
 A.

 In Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 500

(2001), the Court approved the approach taken by the trial judge

here within the context of a remittitur award, stating:

 Because the process of remittitur is
 essentially to "lop-off" excess verdict
 amounts, and not to substitute the court's
 weighing and balancing for that of the jury,
 remitting the award to the highest figure that
 could be supported by the evidence is the most
 analytically solid approach.

 The Court observed, "commentators have concluded that such

an approach tampers least with the intentions of the jurors, who

by implication wanted to fully compensate the plaintiffs." Ibid.

(citation and internal quotation marks omitted); see also Jastram

ex rel. Jastram v. Kruse, 197 N.J. 216, 228 (2008) (noting the

court's role "in assessing a jury verdict for excessiveness is to

 5 A-0879-14T1
assure that compensatory damages awarded to a plaintiff encompass

no more than the amount that will make the plaintiff whole"

(citation and internal quotation marks omitted)). Applying these

principles to the determination of an additur award, the award

should be "the [lowest] figure that could be supported by the

evidence." Fertile, supra, 169 N.J. at 500. Whether additur or

remittitur, the goal is to bring the award within the "broad range

of acceptable outcomes." Cuevas, supra, 226 N.J. at 508.

 Thus, the standard applied by the trial judge – that he should

determine the "the lowest verdict that a reasonable jury could

have reached based on the proof in this case" – was correct.

 B.

 At the time the motion was decided, the judge was guided by

our Supreme Court's decision in He v. Miller, 207 N.J. 230, 258-

59 (2011), which held that a trial judge could – and, arguably,

should – rely on the judge's personal knowledge of verdicts from

private practice and "comparable" verdicts submitted by the

parties to a remittitur motion. In keeping with that holding, the

trial judge afforded the parties an opportunity to provide

comparable verdicts and referred to those verdicts in setting

forth the reasons for the amount of the additur award.

 In Cuevas, supra, 226 N.J. at 486, which was decided after

the motion was decided here, the Court noted and did not alter the

 6 A-0879-14T1
"fundamental principles governing remittitur jurisprudence"

articulated in He and described above. However, the Court

concluded that the method endorsed in He to implement those

principles was "not sound in principle or workable in practice."

Ibid. The Court specifically disapproved reliance upon the trial

"judge's personal knowledge of" other verdicts and "the

comparative-verdict methodology that allows parties to present

supposedly comparable verdicts based on case summaries." Ibid.

 The Court directed trial courts to "focus their attention on

the record of the case at issue." Id. at 505. The Court

acknowledged "different juries and judges may have different views

on the issue of adequate compensation for pain and suffering --

all reasonable and falling within a broad range of acceptable

outcomes." Id. at 508. Although we apply the same standard for

reviewing the damages award as the trial court, we "must pay some

deference to a trial judge's 'feel of the case.'" Id. at 501

(quoting Johnson v. Scaccetti, 192 N.J. 256, 282 (2007)).

 The trial judge here recited each of the "comparable" verdicts

presented to him by counsel. However, he noted the "wide

divergence" in the results "suggests that predicting what a jury

might do in any particular case is a fool's errand," because of

the differences in each case, lawyer, jury, judge, county and

year. It is evident from the transcript that the judge did not

 7 A-0879-14T1
reach his conclusion as to the appropriate amount of the additur

award by relying upon the methodology rejected by the Supreme

Court in Cuevas.

 In his decision, the trial judge first reviewed the evidence

regarding plaintiff's injuries and the impact on her life, noting

the following:

 At the time of the accident, plaintiff was forty-five years

old with a life expectancy of 34.7 years. She had a thirteen-year

old daughter and a ten-year-old son. Because her husband was

permanently disabled and unable to work, she was the only income

earner. She continued to work at the job she had before the

accident, a delicatessen clerk in a supermarket, and was "able to

ameliorate the physicality of the job through the assistance of

her [fellow] employees." She bore the responsibility for "the

bulk of the family functions" and, despite "constant and

unremitting pain," she "continue[d] to vacuum, clean, move

furniture when required, maintain the yard, [and] do the laundry."

Her ability to participate in her children's activities, such as

attending their events, "was severely compromised . . . because

she [could not] sit for a long period."

 The trial judge described plaintiff's pain as "constant and

unremitting," "sometimes of an extreme nature," often requiring

her to sleep in a recliner. He noted that she continued with pain

 8 A-0879-14T1
management therapy as a result. The trial judge also reviewed the

medical testimony and noted the jury's finding that plaintiff

suffered a permanent injury reflected its assessment that the

medical testimony she proffered was credible.

 The trial judge provided reasons why he determined "any

additur awarded will be on the lower edge of the [c]ourt's

discretion," which included the following:

 Ms. Orientale through necessity has continued
 to work through all the pain and discomfort,
 she is not bedridden. The jury may have
 weighed this factor heavily.

 [T]he reviewing court must assume that the
 jury found the credibility of some of
 plaintiff's witnesses low, particularly the
 day to day [e]ffects of Ms. Orientale's life.

 At another point in his decision, the trial judge commented

on the jury's failure to award any damages to plaintiff's husband

on the loss of consortium claim: "A jury had every right to

conclude that his testimony on that claim was overstated or

inflated or less than credible," and that there could be a

spillover effect when the jury discounted the credibility of one

witness in assessing other witnesses. He concluded,

 Considering this court's feel of the
 case[,] . . . the lowest verdict that a
 reasonable jury could have reached based on
 the proofs in this case, in consideration of
 the cases cited above in New Jersey is
 $47,500. That is to say, the jury has already
 awarded $200, I'm adding $47,300.

 9 A-0879-14T1
 We are satisfied that, despite the trial judge's reference

to the "comparable" verdicts supplied to him, the award he chose

was anchored in his familiarity with the record and "feel of the

case." In his approach, he acknowledged the presumption of

correctness due the jury verdict. In reviewing the evidence, he

noted the jury had found credible plaintiffs' proofs regarding

permanency and also cited reasons why the jury may have found less

credible the testimony of other witnesses. The resulting award

does not shock the judicial conscience. See Cuevas, supra, 226

N.J. at 485.

 Giving appropriate deference to the trial judge's feel of the

case, we discern no grounds for disturbing the additur award here.

 Affirmed.

 10 A-0879-14T1