SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

## Graphnet, Inc. v. Retarus, Inc. (A-71-20) (085529)

**Argued November 30, 2021 -- Decided February 11, 2022**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a new trial on all damages is required when the jury is improperly instructed on nominal damages and a plaintiff opposes remittitur.

Plaintiff Graphnet, Inc. and defendant Retarus, Inc. are considered industry competitors -- they each provide, among other things, cloud-based facsimile services. In 2014, Retarus published a brochure containing allegedly defamatory statements about Graphnet. The brochure described Retarus's services, listed some of its then-clients, and contained a section titled "Competition Analysis" that described the purported advantages of Retarus's services over named competitors, including Graphnet. The brochure listed several "[d]isadvantages" of Retarus's competitors, including security issues, lack of customer support, and "difficulty with uptime (especially Graphnet)."

Graphnet representatives received a copy of the brochure at a May 2016 event. In August 2016, Graphnet filed a complaint against Retarus. Throughout discovery, Graphnet failed to produce requested documents and took no depositions. Based on Graphnet's failure to present supporting evidence, the trial court dismissed all claims except for the defamation and slander claims.

The trial court and the parties agreed that the court would charge the jury pursuant to Model Civil Jury Charge 8.46, entitled "Defamation Damages (Private or Public)," which instructs a jury on the elements of defamation. The trial court's instructions tracked the model charge closely, including Section D, which is devoted to "Nominal Damages for Slander <u>Per Se</u> or Libel." In keeping with the model charge, the court instructed the jurors in part (emphases added):

> For these reasons, <u>you are permitted to award nominal damages to compensate the plaintiff</u> for injury to reputation which you reasonably believe that may have been sustained. <u>Nominal damages</u> are a small amount of money damages that <u>are not designed to compensate a plaintiff</u>, but are awarded for

1

the infraction of a legal right where the extent of the loss is not shown or where the right is one not dependent on the loss or damage.

Neither party objected to the instructions at trial. The jury ultimately awarded Graphnet $0 in compensatory damages but $800,000 in nominal damages.

Retarus filed a motion for remittitur. Graphnet opposed the motion. The trial court granted Retarus's motion, holding that the $800,000 award "was grossly disproportionate to the purpose of nominal damages." The court reduced Graphnet's award to $500, in part relying on N.J.S.A. 2A:15-5.10, which defines nominal damages as "damages that are not designed to compensate a plaintiff and are less than $500." A final order of judgment in the amount of $500 was entered in May 2019.

Graphnet appealed, arguing that the trial court erred as a matter of law by ordering remittitur without Graphnet's consent. The Appellate Division affirmed in part, reversed in part. The court recognized that the jury's $800,000 nominal damages award was "shockingly excessive and cannot stand" but concluded that the trial court improperly awarded Graphnet $500 in nominal damages in violation of the well-settled doctrine of remittitur. The appellate court remanded for a new trial on nominal damages only.

The Court granted certification. 246 N.J. 440 (2021).

**HELD:** As the Appellate Division found, remittitur was improper without Graphnet's consent. But this matter requires a new trial on all damages in which the jury is properly instructed on actual and nominal damages. The Court also refers Model Civil Jury Charge 8.46D to the Committee on Model Civil Jury Charges to be amended.

1. There are three main types of damages available in an action for defamation: (1) compensatory or actual; (2) punitive or exemplary; and (3) nominal. Compensatory damages depend on showings of actual harm, and may not include a damage award presumed by the jury. Unlike compensatory damages, nominal damages do not attempt to compensate the plaintiff for an actual loss. A nominal damages award may be made in a defamation case to a plaintiff who has not proved a compensable loss. Such an award is a judicial declaration that the plaintiff's right has been violated. It serves the purpose of vindicating the plaintiff's character by a verdict of a jury that establishes the falsity of the defamatory statement. Because nominal damages are awarded only when no showing of loss has been made, they are envisioned as more of a legal remedy than a financial one. Nominal damages, under New Jersey law, can best be defined as "a token amount of not more than $500." (pp. 14-16)

2. A grant of remittitur allows a court to decrease a "grossly excessive damages award returned by a jury." Cuevas v. Wentworth Grp., 226 N.J. 480, 499 (2016). In setting a

2

remittitur, the court must determine "the amount that a reasonable jury, properly instructed, would have awarded." Orientale v. Jennings, 239 N.J. 569, 577 (2019). However, the court must obtain the plaintiff's consent before it may grant remittitur. In other words, "[t]he plaintiff has the choice either to accept the award as remitted by the court or to proceed with a new damages trial before another jury." Cuevas, 226 N.J. at 499. "The absence of mutual consent means that the case proceeds to a second jury for a new damages trial." Orientale, 239 N.J. at 595. (p. 17)

3. Erroneous jury instructions typically constitute reversible error. Such error most commonly results from changes to adapt a model jury charge to the circumstances of a particular case, but it can also result from a fatal flaw within a charge itself. (pp. 17-19)

4. The grant of remittitur here -- made without consent of the plaintiff -- was error. The Court therefore considers the appropriate scope of the proceedings on remand. One can only speculate as to the jury's intentions in awarding Graphnet $0 in compensatory damages and $800,000 in nominal damages. That is because the awards were made after improper jury instructions. Nominal damages can be awarded in a defamation case when a plaintiff has not proven a compensable loss. Here, following the model jury charge, the jury was first told it could "award nominal damages to compensate the plaintiff" and then told that "[n]ominal damages . . . are not designed to compensate a plaintiff." The contradictory instruction given on nominal damages did not adequately convey the law. Instead, it opened the door for the jury to attempt to compensate Graphnet through nominal damages in a way that was either wholly impermissible under the law or a miscategorized but otherwise permissible form of compensatory damages. Viewing the record in the light most favorable to Graphnet, as is required under the appropriate standard of review, there is a possibility that the compensatory damages award might have been different had the jury been properly instructed on the nature and function of nominal damages. Therefore, a new trial on all damages is required. (pp. 19-21)

5. The model jury charge, as written, fails to instruct on the definition, scope, and purpose of nominal damages. It instructs the jury "to compensate the plaintiff," but then contradicts itself by explaining that nominal damages "are not designed to compensate a plaintiff." The Court provides a charge for use on remand in the instant case and refers Model Civil Jury Charge 8.46D to the Committee on Model Civil Jury Charges to address the issues noted in this opinion. (pp. 22-23)

**AFFIRMED AS MODIFIED. REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion.**

SUPREME COURT OF NEW JERSEY
A-71 September Term 2020
085529

Graphnet, Inc.,

Plaintiff-Appellant,

v.

Retarus, Inc.,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| November 30, 2021 | February 11, 2022 |

Joseph Schramm, III, argued the cause for appellant
(FisherBroyles, attorneys; Joseph Schramm, III, on the
briefs).

Karl Geercken argued the cause for respondent (Alston &
Bird, attorneys; Karl Geercken and Steven L. Penaro, on
the briefs).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this appeal, the Court considers whether a new trial on all damages is required when the jury is improperly instructed on nominal damages and a plaintiff opposes remittitur.

1

Plaintiff Graphnet, Inc. and defendant Retarus, Inc. are competitors in the cloud-based messaging industry.  In 2014, Retarus published a brochure containing allegedly defamatory statements about Graphnet.  Graphnet filed a civil action against Retarus in 2016 alleging, among other causes of action, defamation.

Following trial, the court instructed the jury on damages for defamation following Model Civil Jury Charge 8.46D, which instructs a jury that it may award nominal damages "to compensate" a plaintiff for injury to reputation caused by a defendant's defamation.  The jury returned a unanimous verdict finding that Retarus defamed Graphnet.  By a 5-1 vote, the jury found that Graphnet failed to show that it suffered actual damages.  However, the jury awarded Graphnet $800,000 in nominal damages.

Without obtaining Graphnet's consent, the trial court granted Retarus's motion for remittitur and reduced the nominal damages award to $500, holding that $800,000 in nominal damages was grossly disproportionate to the purpose of nominal damages.

The Appellate Division agreed that the initial nominal damages award could not stand, but it vacated the trial court's order and remanded for a new trial on nominal damages because, in its view, granting a defendant's motion for remittitur without a plaintiff's consent was improper.

2

For the reasons that follow, we affirm the Appellate Division's finding that remittitur was improper without Graphnet's consent. However, we conclude that this matter requires a new trial on all damages in which the jury is properly instructed on actual and nominal damages. We also refer Model Civil Jury Charge 8.46D to the Committee on Model Civil Jury Charges to be amended.

I.

Graphnet and Retarus are considered industry competitors -- they each provide, among other things, cloud-based facsimile services. In February 2011, Retarus, which is headquartered in Germany, announced an expansion into the North American market.

In 2014, Retarus prepared the brochure that is the subject of Graphnet's defamation claim here. The brochure described Retarus's services, listed some of its then-clients, and contained a section titled "Competition Analysis" that described the purported advantages of Retarus's services over named competitors, including Graphnet. The brochure listed several "[d]isadvantages" of Retarus's competitors, including security issues, lack of customer support, and "difficulty with uptime (especially Graphnet)."

In May 2016, members of Graphnet's sales team attended a technology exposition event called Techspo in New York City. Retarus distributed the

3

brochure at the event, and Graphnet's sales team brought a brochure back to a member of Graphnet's Executive Team, Guy Conte.

A.

On August 16, 2016, Graphnet filed a complaint against Retarus asserting defamation/slander; disparagement of goods/trade libel; false light; tortious interference with prospective economic advantage; tortious interference with a contract; and unjust enrichment. Through an amendment to the complaint, Graphnet added several causes of action, including violations of the Telecommunications Act and Federal Communication Commission regulations.

Throughout discovery, Graphnet failed to produce requested documents and took no depositions. On September 14, 2018, Retarus moved for summary judgment. Based on Graphnet's failure to present supporting evidence, the trial court dismissed all claims except for the defamation and slander claims.

A six-day jury trial began on January 29, 2019. At trial, Graphnet introduced evidence that it had lost revenue from several clients after Retarus published the brochure, most notably J.P. Morgan Chase (JPMC). JPMC was a longstanding client of Graphnet's for almost two decades and, at times, generated $1.5 million in annual revenue for Graphnet. Retarus began doing business with JPMC in 2014; that year, JPMC generated more than $1 million

4

in revenue for Graphnet. However, by 2015, Graphnet's revenue from JPMC began to decline, generating approximately $800,000 in 2015, $300,000 in 2016, and $100,000 in 2017. During this time, Retarus's revenue from JPMC began to increase. Retarus gained revenue from JPMC of approximately $1.5 million in 2016, $1.7 million in 2017, and $1.8 million in 2018. By 2019, JMPC had ceased doing business with Graphnet.

Retarus's Senior Vice President of Sales, Tim Valentine, testified at trial that the brochure was not a promotional brochure intended to be given to potential clients, but rather an internal tool used to train Retarus's telemarketers. He testified that he was unaware of Retarus distributing the brochure to any potential clients or anywhere outside of the company. Graphnet did not provide testimony at trial from anyone who received the brochure at the Techspo exhibition.

The jury heard testimony derived from the affidavit and deposition of Jeffrey Chaney, who worked at JPMC from 2001 to 2015 and had dealings with both Graphnet and Retarus during that time. Chaney testified that he had seen the brochure years earlier and that it looked "like a sales pitch to [JPMC] of what Retarus can do for [JPMC]." He also testified that Retarus had neither disparaged Graphnet nor provided materials to JPMC that cast Graphnet in a

5

negative light. Chaney stated that JPMC did not rely on the brochure in choosing Retarus as a new vendor.

Conte testified that JPMC began reducing its business with Graphnet as early as 2013 and conceded that Graphnet received complaints from many customers, including JPMC, regarding issues in Graphnet's services that resulted from damage sustained from Hurricane Sandy in 2012.

B.

The trial court and the parties agreed that the court would charge the jury pursuant to Model Civil Jury Charge 8.46, entitled "Defamation Damages (Private or Public)," which instructs a jury on the elements of defamation. Section A provides general instructions on damages, distinguishing between compensatory and punitive damages. Sections B through D, in turn, focus on compensatory damages: Section B applies to most claims for compensatory or actual damages; Section C is devoted to compensatory damages for emotional suffering; and, of particular relevance here, Section D is devoted to "Nominal Damages for Slander Per Se or Libel."

The trial court first provided the following instruction to the jury on general damages:

> For the injury to reputation caused by defendant's alleged defamatory statement, plaintiff seeks to recover compensatory damages. Compensatory damages are sought by the plaintiff for the recovery of money value

6

of their loss. If the plaintiff has established the essential elements of their claim as explained in my instructions, they're entitled to compensatory damages for all detrimental effects of the defamatory statement relating to the plaintiff's reputation which were reasonably to be foreseen and which are the direct and natural result of the defamatory statement. Damages awarded for such purposes are compensatory.

That instruction followed Section A nearly verbatim other than the removal of language about punitive damages, which were not sought by Graphnet.

The trial court then provided the jury the following instruction on compensatory damages:

[C]ompensatory damages are referred to as special damages. These damages are never presumed. They must be specified by the plaintiff and proved by the evidence. Plaintiff must show you what the special loss was and by what sequence of connected events it was produced by the defamation.

Plaintiff can recover these damages only if you determine that the defendant's conduct was a substantial factor in causing plaintiff's actual losses, financial or economic. Evidence of embarrassment, mental suffering or physical sickness will not -- and this really doesn't apply to it -- a company mental suffering or sickness, but embarrassment will not, without more, entitle plaintiff to these damages.

Here, the plaintiff claims that they suffered specific damage as a result of the publication of the defamatory statement. I will now outline the specific damages claimed by the plaintiff. And these damages are as follows: it is the loss of business opportunity and loss of business property.

7

That instruction likewise followed Section B very closely, except for the clarification about mental suffering or physical sickness.

Lastly, the trial court provided the following instruction to the jury on nominal damages:

> In the event that you find the plaintiff is not entitled to actual damages plaintiff claims were caused by defendant's wrongful act, plaintiff seeks for recovery for nominal damages which the law presumes to follow naturally and necessarily from the publication of the [libel] and are recoverable by the plaintiff without proof of causation and without proof of actual injury. The law recognizes the damage to reputation caused by defamation may not always lend itself to proofs of -- by objective evidence.
>
> An opportunity may be closed to the business without their knowledge. Damage to the character or reputation could occur without the corporation or the business knowing of the [libel] or slander. A person's business or, in this case, may be limited by the operations of forces which the person cannot identify, but which, nevertheless, were set in motion by the defamatory statement. In fact, it has been said that the damages which are presumed from publication of a defamatory statement or material, while not capable of being accurately measured, are in many ways more substantial and real than those which can be proved and measured accurately by a dollar amount.
>
> For these reasons, <u>you are permitted to award nominal damages to compensate the plaintiff</u> for injury to reputation which you reasonably believe that may have been sustained. <u>Nominal damages</u> are a small amount of money damages that <u>are not designed to compensate a plaintiff</u>, but are awarded for the infraction of a legal

8

> right where the extent of the loss is not shown or where the right is one not dependent on the loss or damage.
>
> [(emphases added).]

Again, that instruction essentially followed Section D of the Model Civil Jury Charge verbatim.

Neither party objected to the instructions at trial, and the parties agreed to a jury verdict sheet of six questions, three of which were related to damages. While it deliberated, the jury asked the court questions about calculating damages, including whether the verdict sheet contained a typo in Question 6, printed below, which concerned nominal damages. The court explained to the jury that Question 6 asked "what is the amount of nominal damage -- damages Graphnet is entitled to compensate Graphnet -- Graphnet's injury to reputation which you reasonably believe it sustained." The parties agreed on the court's explanation.

On February 5, 2019, the jury returned a verdict finding Graphnet had not shown actual damages suffered as a result of the 2014 publication of the brochure to a third party. The jury answered the questions concerning damages as follows, and these responses were confirmed by individually polling the jurors:

> Question 4: Has Graphnet shown by a preponderance of the evidence actual damages that it suffered as a result of the statement made by Retarus?

9

Answer 4: No.

Question 5: What is the amount of compensatory damages (actual damages) Graphnet is entitled to as a result of Retarus's defamatory statements?

Answer 5: Zero.

Question 6: In the event that you find that Graphnet is not entitled to actual damages, Graphnet may recover nominal damages without proof of causation and without proof of actual harm for the publication of the defamatory statement to a third party other than Graphnet. What is the amount of nominal damages Graphnet is entitled to compensate Graphnet for the injury to reputation which you reasonably believe is sustained?

Answer 6: Amount of nominal damages: $800,000.
VOTE 6:0

At least five jurors must agree on the answer to this question.

Cease deliberations and return your verdict.

Retarus filed a motion for remittitur. Graphnet opposed the motion. On May 8, 2019, the trial court granted Retarus's motion, holding that the $800,000 award "was grossly disproportionate to the purpose of nominal damages." The court reduced Graphnet's award to $500, in part relying on N.J.S.A. 2A:15-5.10, which defines nominal damages as "damages that are not designed to compensate a plaintiff and are less than $500." A final order of judgment in the amount of $500 was entered on May 24, 2019.

10

## C.

Graphnet appealed, arguing that the trial court erred as a matter of law by ordering remittitur without Graphnet's consent. Graphnet sought reinstatement of the jury award or, in the alternative, a new trial on all damages. Graphnet contended that the jury instruction constituted harmful error and was contradictory because it provided that nominal damages could be awarded "to compensate" a plaintiff.

Retarus argued that a plaintiff's consent to remittitur is not required and that Graphnet waived its opportunity to object to the jury instructions at trial. Retarus submitted that the jury was properly instructed on damages and that, because Graphnet presented no evidence of actual damages, the $800,000 award was excessive as either a nominal damages or actual damages award.

In an unpublished opinion, the Appellate Division affirmed in part, reversed in part, and remanded for a new trial on nominal damages only. The court recognized that the jury's $800,000 nominal damages award was "shockingly excessive and cannot stand." However, it concluded that the trial court improperly awarded Graphnet $500 in nominal damages in violation of the well-settled doctrine of remittitur: "when a court determines that a damages award cannot stand because it is so grossly excessive that it shocks the judicial conscience, [a] 'plaintiff has the choice either to accept the award

11

as remitted by the court or to proceed with a new damages trial before another jury.'" (quoting Cuevas v. Wentworth Grp., 226 N.J. 480, 499 (2016)). Relying on this Court's recent decision in Orientale v. Jennings, the appellate court emphasized that the "absence of mutual consent means that the case proceeds to a second jury for a new damages trial." (quoting 239 N.J. 569, 595 (2019)). The Appellate Division vacated the trial court's order and remanded for a new trial limited to nominal damages.

We granted Graphnet's petition for certification requesting a new trial on all damages. 246 N.J. 440 (2021).

## II.

Graphnet argues that the Appellate Division properly vacated the trial court's remittitur but improperly ordered a new trial on nominal damages only. It maintains that a new jury trial on all damages is required under this Court's holding in Nuwave Investment Corp. v. Hyman Beck & Co., Inc., which "requires a new trial on damages in which the [new] jury is properly instructed on the various categories of damages." 221 N.J. 495, 498 (2015). Graphnet submits that the trial court's erroneous instruction to the jury that it could "compensate" Graphnet with a nominal damages award described actual damages and led to the $800,000 nominal damages award. Graphnet also

requests that this Court provide guidance on Model Civil Jury Charge 8.46D for future cases.

Retarus, on the other hand, argues that the Appellate Division correctly granted a new trial on nominal damages only. It relies on Fertile v. St. Michael's Medical Center to support the argument that the purpose of remittitur is to "avoid the necessity of a new trial." 169 N.J. 481, 491 (2001). Retarus also relies on an unpublished Appellate Division opinion to support its argument that Graphnet is not entitled to a new trial on compensatory damages because the jury found that Graphnet did not suffer actual harm. Retarus argues that, if granted a new trial on all damages, Graphnet will unfairly be given another bite at the apple to prove compensatory damages, even though the jury found it was entitled to none.

### III.

This Court reviews a trial court's grant of remittitur de novo, but defers to a trial court's "feel of the case." Cuevas, 226 N.J. at 502. However, "[a] judge's 'feel of the case' based on observing a party or a witness in the courtroom is entitled to minimal weight if the jury had the same opportunity to make similar observations"; it is "the jury's 'feel of the case' [that] controls the outcome of the issues in dispute." Ibid.

13

"[S]ubstantial deference . . . must be accorded [to] a damages award rendered by a jury." Orientale, 239 N.J. at 589. That deference can be overcome only if a defendant establishes by clear and convincing evidence "that the award is a 'miscarriage of justice.'" Cuevas, 226 N.J. at 501 (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)). The fact that a damages award is substantial does not necessarily mean it is excessive and a miscarriage of justice; so long as a jury could rationally have reached the verdict from the evidence presented, it will be upheld. Jastram v. Kruse, 197 N.J. 216, 235 (2008); see also Johnson v. Scaccetti, 192 N.J. 256, 283 (2007) (finding a remittitur unjustified even though the jury's award was "undoubtedly high, perhaps overly generous").

Finally, "the trial record underlying a remittitur motion must be viewed in the light most favorable to the plaintiff." Cuevas, 226 N.J. at 486.

A.

There are three main types of damages available in an action for defamation: "(1) compensatory or actual, which may be either (a) general or (b) special; (2) punitive or exemplary; and (3) nominal." W.J.A. v. D.A., 210 N.J. 229, 239 (2012) (quoting Prosser and Keeton on Torts § 116A at 842 (5th ed. 1984)). "All compensatory damages . . . depend on showings of actual harm, . . . and may not include a damage award presumed by the jury."

14

Nuwave, 221 N.J. at 499. Special actual damages "compensate a plaintiff for specific economic or pecuniary loss," while general actual damages "address harm that is not capable of precise monetary calculation." Ibid. Therefore, actual damages may include "impairment to reputation and standing in [a] community." W.J.A., 210 N.J. at 239 (citation omitted).

Unlike compensatory damages, "[n]ominal damages . . . do not attempt to compensate the plaintiff for an actual loss. Rather, they are a trivial amount . . . ." Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48 (1984) (citation omitted). Nominal damages "'serve[] the purpose of vindicating' the character of 'a plaintiff who has not proved a compensable loss.'" Nuwave, 221 N.J. at 499 (quoting W.J.A., 210 N.J. at 240-41). If "compensatory damages are otherwise available to the plaintiff," nominal damages are not to be awarded. Id. at 500.

With regard to defamation cases, if a statement is found to be defamatory without a finding of actual harm, then "only nominal damages can be awarded." Id. at 499.

> A nominal damages award may be made in a defamation case to a plaintiff who has not proved a compensable loss. Nominal damages are awarded for the infraction of a legal right, where the extent of the loss is not shown, or where the right is one not dependent upon loss or damage. Such an award is a judicial declaration that the plaintiff's right has been violated. It serves the purpose of vindicating the

plaintiff's character by a verdict of a jury that establishes the falsity of the defamatory statement.

[W.J.A., 210 N.J. at 240-41 (citations and quotations omitted).]

Because nominal damages are awarded only when no showing of loss has been made, they are envisioned as more of a legal remedy than a financial one. Modern Federal Jury Instruction 77-6, for example, specifies that "[n]ominal damages may not be awarded for more than a token sum." And the Model Civil Jury Instructions for the District Courts of the Third Circuit (2010) explicitly require that, for certain causes of action, if the jury should "return a verdict for [plaintiff], but [plaintiff] has failed to prove compensatory damages, then you must award nominal damages of $1.00." See, e.g., Charges 4.8.2; 5.4.5; 6.4.5 (emphasis added). New Jersey's court rule does not define nominal damages, but N.J.S.A. 2A:15-5.10, which provides "[d]efinitions relative to punitive damages awards," states that "'[n]ominal damages' are damages that are not designed to compensate a plaintiff and are less than $500."

We find no reason to depart from the limit set for nominal damages by the Legislature. In sum, nominal damages, under New Jersey law, can best be defined as "a token amount of not more than $500."

16

B.

A grant of remittitur allows a court to decrease a "grossly excessive damages award returned by a jury." Cuevas, 226 N.J. at 499. In setting a remittitur, the court must determine "the amount that a reasonable jury, properly instructed, would have awarded." Orientale v. Jennings, 239 N.J. 569, 577 (2019) (quoting Tronolone v. Palmer, 224 N.J. Super. 92,103 (App. Div. 1988)).

If "[a] damages award . . . is so grossly excessive that it shocks the judicial conscience [it] cannot stand, and . . . remittitur allows the parties the option of avoiding the unnecessary expense and delay of a new trial." Ibid. However, the court must obtain the plaintiff's consent before it may grant remittitur. Fertile, 169 N.J. at 491. In other words, "[t]he plaintiff has the choice either to accept the award as remitted by the court or to proceed with a new damages trial before another jury." Cuevas, 226 N.J. at 499. Under this Court's holding in Orientale, "[t]he absence of mutual consent means that the case proceeds to a second jury for a new damages trial." 239 N.J. at 595.

C.

Erroneous jury instructions typically constitute reversible error. Das v. Thani, 171 N.J. 518, 527 (2002). A reviewing court must determine whether "the charge, considered as a whole, adequately conveys the law and is unlikely

17

to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect." Fischer v. Canario, 143 N.J. 235, 254 (1996). "The test, therefore, is whether the charge in its entirety was ambiguous or misleading." State v. R.B., 183 N.J. 308, 324 (2005) (quoting State v. Hipplewith, 33 N.J. 300, 317 (1960)); see also Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 468 (2000) (taking a similar approach to mistakes in jury sheets, which are not grounds for reversal unless they are "so misleading, confusing, or ambiguous that they produce[] an unjust result").

Such error most commonly results from changes made to adapt a model jury charge to the circumstances of a particular case, cf. State v. Ramirez, 246 N.J. 61, 70 (2021) ("It is difficult to find that a charge that follows the Model Charge so closely constitutes plain error." (quoting Mogull, 162 N.J. at 466)), but it can also result from a fatal flaw within a charge itself, see, e.g., Williams v. State, 200 A.3d 314, 316, 328 (Md. 2019) (finding reversible error "where the trial court gave a pattern jury instruction that erroneously omitted an element of the sole offense for which the petitioner was convicted").

New Jersey's Model Civil Jury Charges are valuable aids created by the Model Civil Jury Charge Committee "to be useful to trial judges and litigants," see Model Civil Jury Charges: General Comments, https://www.njcourts.gov/ attorneys/assets/civilcharges/generalcomments.pdf?c=UtQ, but they "are not

18

binding authority," State v. Bryant, 419 N.J. Super. 15, 28 (App. Div. 2011).

"[W]hen the Court has occasion to address the contents of an adopted charge," it may review the language of the charge in question to ensure it is "consistent with the Court's instructions." See Flood v. Aluri-Vallabhaneni, 431 N.J. Super. 365, 384 (App. Div. 2013) (underscoring that courts may "rest assured" that the language of a model charge is indeed consistent with this Court's instructions only when such review has occurred); see also, e.g., Morlino v. Med. Ctr. of Ocean Cty., 152 N.J. 563, 590 (1998) (referring a jury charge to the Committee with instructions for modification).

## IV.

### A.

We first consider whether the grant of remittitur here -- made without consent of the plaintiff -- was error. On this point, our precedent is clear: "only the plaintiff -- not the defendant -- has the choice to accept the remitted amount or proceed to a new damages trial." Orientale, 239 N.J. at 590. Because that did not happen at the trial court, we affirm the Appellate Division's decision to vacate the trial court's order of remittitur and to remand for further proceedings.

### B.

We next consider the appropriate scope of the proceedings on remand.

19

At trial, the jury heard several witnesses testify that a decline in Graphnet's business was unrelated to and occurred well before Retarus's publication of the brochure. And the jury unanimously found that, although Retarus defamed Graphnet, Graphnet failed to prove by a preponderance of the evidence that it suffered actual damages from the defamation (response to Question 4). Accordingly, it awarded Graphnet $0 in compensatory damages (response to Question 5). Yet it simultaneously awarded $800,000 in nominal damages (response to Question 6), which were described first in the jury charge, then in Question 6 itself, and finally in the court's response to the jury's inquiry about Question 6, as a means "to compensate Graphnet for the injury to reputation which you reasonably believe is sustained."

We can only speculate as to the jury's intentions in awarding Graphnet $0 in compensatory damages and $800,000 in nominal damages. That is because the awards were made after improper jury instructions. As noted earlier, nominal damages can be awarded in a defamation case when a plaintiff has not proven a compensable loss. Here, following the model jury charge, the jury was first told it could "award nominal damages to compensate the plaintiff" and then told that "[n]ominal damages . . . are not designed to compensate a plaintiff."

20

The contradictory instruction given on nominal damages did not "adequately convey[] the law." Fischer, 143 N.J. at 254. Instead, it opened the door for the jury to attempt to compensate Graphnet through nominal damages in a way that was either wholly impermissible under the law or a miscategorized but otherwise permissible form of compensatory damages. Viewing the record in the light most favorable to Graphnet, as is required under our standard of review, we can only conclude that there is a possibility that the compensatory damages award might have been different had the jury been properly instructed on the nature and function of nominal damages.

Retarus submits that a new trial solely on nominal damages is required here. We disagree. As originally charged, the instruction conflated actual damages with nominal damages. Under our precedent in Nuwave, the incorrect jury instruction warrants a new trial on all theories of damages rather than one limited to nominal damages only. See 221 N.J. at 500 ("Because it is unclear whether the entirety of the jury award was influenced by the inadequate instruction . . . , the cleanest and most fair resolution is to vacate the entire award and remand this matter for a new trial on damages."). Therefore, a new trial on all damages is required.

21

C.

Finally, we consider how an instruction on nominal damages could appropriately convey to the jury the purpose -- and limitations -- of such damages.

The model jury charge, as written, fails to instruct on the definition, scope, and purpose of nominal damages. It instructs the jury "to compensate the plaintiff," but then contradicts itself by explaining that nominal damages "are not designed to compensate a plaintiff." Therefore, in the instant case, we remand with instructions to charge the jury on nominal damages as follows:

> In the event you find plaintiff is not entitled to actual damages, plaintiff seeks an award of nominal damages, which are recoverable without proof of causation and without proof of actual injury.
>
> The law recognizes that damage to reputation caused by defamation may not always lend itself to proof by objective evidence. An opportunity may be closed to the person without the person's knowledge. Damage to character or reputation could occur without the person knowing of the libel. A person's business or professional career may be limited by the operation of forces which the person cannot identify but which, nevertheless, were set in motion by the defamatory statement. For those reasons, you are permitted to award nominal damages to plaintiff for injury to reputation which you reasonably believe plaintiff sustained.
>
> Nominal damages are a small amount of money damages that are awarded for the infraction of a legal right. They are a token amount of no more than $500.

22

> Nominal damages are not designed to compensate a plaintiff, but rather to recognize that the plaintiff has suffered an infraction and to vindicate the plaintiff's character where the extent of loss is not shown, or where the right is not one dependent upon loss or damage. The law presumes that nominal damages follow naturally and necessarily from the publication of a libel even when no proof of actual loss is available.

We also refer Model Civil Jury Charge 8.46D to the Committee on Model Civil Jury Charges to address the issues noted in this opinion.

V.

The judgment of the Appellate Division is affirmed as modified, and the matter is remanded for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion.

23